June 8, 2017

**Supreme Court**

No. 2015-306-Appeal.
(PM 13-4203)

Darren Gomes :

v. :

State of Rhode Island. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Darren Gomes                           :

v.                                     :

State of Rhode Island.                 :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  The applicant, Darren Gomes, appeals from the Superior Court's denial of his application for postconviction relief.  This case came before the Supreme Court for oral argument on March 30, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After carefully considering the record and the parties' written and oral submissions, we conclude that cause has not been shown and shall proceed to decide the appeal without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

In January 2004, Gomes was indicted by a grand jury as follows: count 1, assault in a dwelling house with intent to murder while armed with a dangerous weapon; count two, assault with a dangerous weapon, to wit, a pistol; count 3, use and discharge of a firearm causing permanent incapacity while committing a crime of violence; and count 4, carrying a pistol on or

about his person without a license. In September of that year, he disposed of the charges against him by pleading nolo contendere to counts 1 and 4. In return, the state dismissed counts 2 and 3 in accordance with Rule 48(a) of the Superior Court Rules of Criminal Procedure. On count 1, Gomes was sentenced to thirty years at the Adult Correctional Institutions (ACI), twelve years to serve and eighteen years suspended, with eighteen years' probation. On count 4, he was sentenced to ten years at the ACI, suspended, with ten years' probation to run concurrently with count 1.

According to Gomes, he was released from the ACI on parole on July 1, 2009. In March 2013, while he remained on parole and after an incident with his ex-girlfriend, he was arrested and charged with domestic assault[1] and failure to relinquish a telephone.

Unfortunately for Gomes, that was neither his first nor his only scrape with the law during his parole; an incident that had occurred in February 2013, a few weeks before the March incident, caused an arrest warrant to be issued against him. This incident resulted in a new charge of breaking and entering. His ex-girlfriend, the mother of his son, was the complaining witness in both complaints.

**Probation Violation Hearing**

Based upon the two separate incidents involving his ex-girlfriend, the state filed a notice of violation against Gomes pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. A hearing on the violation was held on May 23, 2013, in which Gomes was represented by private counsel.[2] It appears from the record that Gomes was under the impression that the complaining witness, his ex-girlfriend, would not testify against him at the violation

---

[1] Gomes was represented by a public defender on the assault charge. That charge was dismissed on April 24, 2013, when the complaining witness failed to appear for trial.
[2] Gomes now contends that this privately retained attorney was ineffective.

hearing because she had not appeared for trial on the simple assault charge. To his dismay, however, and to Gomes's visible distress, she did appear and she was on the witness stand ready to testify. Before the state began its direct examination of the witness, as a result of Gomes's emotional state, the state declared, "Your Honor, maybe the defendant needs a minute. I think he needs a minute. Do you think maybe he should be brought in the back?" In response, the hearing justice instructed Gomes to "control [him]self."

After this brief interruption, the witness's testimony proceeded. However, as soon as the witness began reading from her prior recorded handwritten statement describing the incident, Gomes's attorney asked for a sidebar conference. Following the sidebar conference, the hearing justice asked the witness to step down because he was unsure whether the hearing would continue or not. Gomes's attorney then asked if he could "have one moment with [Gomes] just to explain[.]" Shortly thereafter, Gomes's attorney articulated that he had "informed [his] client that he ha[d] a right to a violation hearing[, and that] [a]t that hearing, the judge of this court would have to be reasonably satisfied that he did not keep the peace or be of good behavior while he was out." Gomes's attorney then indicated that Gomes "wishe[d] to forego that hearing and would like to admit violation." Next, the hearing justice asked Gomes to come forward and the following colloquy ensued:

> "THE COURT:  * * * Mr. Gomes, did you hear what your lawyer just told me?
> "THE DEFENDANT:  Yes.
> "THE COURT:  And is it true, sir, that you are prepared to admit to me that you violated the terms and conditions of your probation --
> "THE DEFENDANT:  Yes.
> "THE COURT:  -- knowing, sir, that you have a right to a hearing before me where the State would be required to prove to my reasonable satisfaction that you did not keep the peace and be of good behavior?
> "THE DEFENDANT:  Yes.

- 3 -

> "THE COURT: And at that hearing, Mr. Gomes, you would have a right to confront and cross-examine the State's witnesses against you and to present evidence on your own behalf if you chose to do so?
> "THE DEFENDANT: Yes.
> "THE COURT: And you would have a further right to appeal any adverse findings to our Rhode Island Supreme Court. It is my understanding, Mr. Gomes, that you want to waive that hearing and admit to me that you violated your probation; is that correct, sir?
> "THE DEFENDANT: Yes.
> "THE COURT: Are you doing this freely and voluntarily?
> "THE DEFENDANT: Yes.
> "THE COURT: I find the defendant admits violation, and I declare him to be a violator."

After this colloquy, Gomes was sentenced to serve nine years of his previously-suspended eighteen year sentence, with the remaining nine years suspended, with probation.

## Application for Postconviction Relief

In August 2013, Gomes filed an application for postconviction relief. In that application, he alleged, among other things, that he had been denied the effective assistance of counsel at the violation hearing and that he did not knowingly, intelligently, and voluntarily admit a violation of probation.[3] A hearing on his postconviction relief application was held in August 2014.

## Postconviction Relief Hearing

At the postconviction-relief hearing, Gomes testified that, after he engaged his attorney, he met with him on three occasions.[4] While they were discussing the breaking and entering charge, Gomes said that he informed his attorney that the residence on file with the parole board

---

[3] The court first appointed a public defender to represent Gomes on his application for postconviction relief; however, a private attorney was subsequently appointed. This second court-appointed lawyer then filed a motion to withdraw in accordance with this Court's holding in Shatney v. State, 755 A.2d 130 (R.I. 2000), opining that Gomes's application for postconviction relief was without merit. The motion to withdraw was granted and a third attorney was appointed to represent Gomes.

[4] The meetings occurred on April 30, 2013, May 7, 2013, and May 14, 2013.

as his place of abode was the same place at which the incident leading to his arrest had occurred. Gomes maintained that, if his attorney spoke to the parole board and the landlord of the property, it "would show [his] innocence, that [he] didn't do the breaking and entering on [his] own house" because the landlord had given him permission to live there by including his name on the lease. He also relayed to his attorney that he did not believe that his ex-girlfriend would appear at the violation hearing and he asked the attorney to contact her.[5] Gomes said that, at subsequent meetings, his attorney told him that "he was playing phone tag with" his ex-girlfriend. Gomes also said that his attorney informed him that he had not spoken to any of the other witnesses that Gomes had asked him to contact.

When Gomes's attorney testified at the postconviction-relief hearing, he admitted that he had not reached out to the witnesses to whom Gomes had directed him. However, he maintained that he believed that Gomes had "bigger issues" than whether or not he lived at the house where the incident took place and that "[t]hat was not going to make or break [his] case." His attorney testified that there were other "witnesses that were going to testify, if believed, per the police report, that [Gomes] assaulted [his ex-girlfriend] not just on the B and E date but on the simple assault date. Him [sic] living in that house had no bearing, in [the attorney's] opinion, on that case."

Gomes further testified at the postconviction-relief hearing that his attorney had not communicated any offers to him that might resolve the probation violation. According to Gomes's attorney, however, both a twelve-year offer to "wrap"[6] and the nine-year offer in return

---

[5] Gomes testified at the postconviction-relief hearing that he wanted to proceed with a violation hearing because he did not think his ex-girlfriend would show up. His testimony is corroborated by his attorney's testimony that it was Gomes's decision to proceed with a violation hearing.

[6] In a probation violation context, when there is a new charge leading to a probation violation, the old charge and the new charge may be resolved together, or "wrapped."

for an admission to the probation violation were conveyed to him on May 8. He first testified that he made Gomes aware of those offers on May 14,[7] but when asked later in his testimony, he acknowledged that he did not remember when he communicated the offer to Gomes. He then conceded that he communicated the offer to Gomes in the cellblock on the day of the violation hearing.

Gomes testified that, by the time he arrived at the cellblock on the day of his violation hearing, he did not know whether his attorney had spoken to any of the three witnesses he had asked him to contact. He also testified that, before the violation hearing began, his attorney visited him in the cellblock and informed him that his ex-girlfriend had indeed appeared for the hearing. Gomes testified that it was at that time that he asked his attorney to "try to get [him] a deal." However, according to Gomes, his attorney told him, "We're going to play like we're doing the violation hearing. When [the ex-girlfriend] starts to testify, I'm going to stop the hearing."

According to Gomes, he "lost it" as he entered the courtroom; he testified that he had an "emotional breakdown, a panic attack" and that he began to sob. He maintained that he was distraught because he was "under intense pressure" and he knew that his attorney had not done a proper investigation before the violation hearing. When asked if he was thinking clearly at that point, he responded that he was not, due to his "emotional state."

Gomes also testified that, shortly after his ex-girlfriend commenced her testimony, his attorney stopped the hearing and asked for a sidebar conference with the hearing justice.[8] Gomes testified that, after the sidebar conference, his attorney approached him and told him to

---

[7] Although he said he could not be certain, Gomes's attorney testified that he "definitely would have told [Gomes about the offer] at the prison because [he] saw him after [the] offer was made."
[8] It is noteworthy that Gomes's attorney testified that it was Gomes's decision to stop the hearing.

take the nine year offer. This, according to Gomes, was the first time during the entire pendency of his violation hearing that any offer had been conveyed to him.

After hearing testimony and the arguments of the parties, the hearing justice issued a bench decision. She found that Gomes was generally credible on many points and that his attorney was "credible enough." Notwithstanding such credibility determinations, the hearing justice, assuming the inadequacy of the attorney's performance, remained unpersuaded that Gomes had suffered any prejudice, thereby not satisfying the second prong of the test annunciated in Strickland v. Washington, 466 U.S. 668 (1984).[9]

The hearing justice concluded that she was not convinced that Gomes would have prevailed at the violation hearing or that he would have obtained a materially different outcome had he continued with the hearing, even if represented by different counsel. Rather, she found that there was ample evidence to support a finding of violation. She articulated that both Gomes's ex-girlfriend and her neighbor were present and prepared to testify at the hearing. The hearing justice further determined that, even assuming his ex-girlfriend and the other witnesses were found to be not credible or had been successfully impeached, she easily could have been reasonably satisfied that Gomes had failed to keep the peace and be of good behavior. Significantly, Gomes did not deny that he broke down the door to the residence and he admitted to confiscating his ex-girlfriend's cell phone during one of their arguments. The hearing justice was also not persuaded that Gomes would have done any better than the nine-year incarceration disposition that his attorney was able to negotiate on his behalf.

---

[9] In order to prevail on a claim of ineffective assistance of counsel, an applicant must prove, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

With respect to Gomes's contentions that his attorney failed to contact the landlord and the parole board or to obtain evidence confirming his legal residence at the ex-girlfriend's apartment, the hearing justice found it to be of no assistance to Gomes. She indicated that, even though he could not have been convicted of breaking and entering into his own home, there was, nevertheless, evidence that he had assaulted his ex-girlfriend. Furthermore, she found that it was of no assistance to Gomes that his attorney may have failed to earlier communicate the offer of nine years to him, because he ultimately agreed to and received that sentence, and, therefore, that he had not suffered any prejudice arising from any alleged failure to communicate that offer to him.

Additionally, the hearing justice analyzed Gomes's claim that the violation hearing justice had violated Rule 11[10] of the Superior Court Rules of Criminal Procedure.[11] The postconviction-relief hearing justice reasoned that the violation hearing justice made appropriate inquiry as soon as he was informed by defense counsel that Gomes had made a decision to admit to the violation. The violation hearing justice brought Gomes forward so that he could observe him more closely and he asked him direct and clear questions. Gomes was able to discuss the plea with his attorney and he appeared to be calm while answering all of the violation hearing

_____

[10] Rule 11 of the Superior Court Rules of Criminal Procedure provides, in pertinent part, that:

> "The court * * * shall not accept [a plea of guilty] or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

[11] The state's Rule 12A statement indicates that the Superior Court incorrectly analyzed this claim pursuant to Rule 11. However, the state points out that Gomes, on appeal, "appears to properly recognize that his probation-violation admission is unassailable so long as it was 'made voluntarily, knowingly, and intelligently.'"

- 8 -

justice's questions. Finally, the postconviction-relief hearing justice concluded that "[t]he colloquy between the two g[ave] no indication that Mr. Gomes, despite a previous display of emotion, did not understand what he was doing or did not mean what he said when he responded to the Magistrate's questions." After the hearing justice denied his application for postconviction relief, Gomes timely appealed to this Court.

## II

### Standard of Review

Under Rhode Island law, postconviction relief is set forth in G.L. 1956 § 10-9.1-1(a)(1). See Perkins v. State, 78 A.3d 764, 767 (R.I. 2013). "[P]ost-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." Torres v. State, 19 A.3d 71, 77 (R.I. 2011) (quoting Otero v. State, 996 A.2d 667, 670 (R.I. 2010)). "An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." Rivera v. State, 58 A.3d 171, 179 (R.I. 2013) (quoting Anderson v. State, 45 A.3d 594, 601 (R.I. 2012)).

When reviewing an appeal arising from the denial of an application for postconviction relief, "[t]his Court will not impinge upon the fact-finding function of a hearing justice * * * 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings.'" Anderson, 45 A.3d at 601 (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)). "However, when a decision regarding postconviction relief 'involv[es] questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights,' this Court's standard of review is de novo." Id. (quoting State v. Laurence, 18 A.3d 512, 521 (R.I. 2011)). Nevertheless, "[e]ven when the de novo

standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." Id. (quoting Rice v. State, 38 A.3d 9, 16 (R.I. 2012)).

## III

### Analysis

### Ineffective Assistance of Counsel

This Court has held that "[a] defendant has the right to the effective assistance of counsel at a probation-violation hearing at which the defendant's liberty is at stake." State v. Gilbert, 984 A.2d 26, 30 (R.I. 2009) (citing Hampton v. State, 786 A.2d 375, 380 (R.I. 2001)). In reviewing claims of ineffective assistance of counsel, it is well established that this Court adheres to "the familiar two-pronged test announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 * * * (1984)." Reyes v. State, 141 A.3d 644, 654 (R.I. 2016).

Under this framework, an applicant for postconviction relief "must demonstrate both that 'counsel's performance was deficient in that it fell below an objective standard of reasonableness' and that 'such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'" Perkins, 78 A.3d at 767 (quoting Hazard v. State, 64 A.3d 749, 756 (R.I. 2013)).

When addressing the performance prong, "[c]ourts evaluate counsel's performance 'in a highly deferential manner,' * * * employing 'a strong presumption that counsel's conduct falls within the permissible range of assistance[.]'" Reyes, 141 A.3d at 654-55 (quoting Bido v. State, 56 A.3d 104, 111 (R.I. 2012)). "To satisfy the prejudice prong, '[t]he [applicant] must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 655 (quoting Strickland, 466 U.S. at 694).

Assuming without deciding that Gomes has met the performance prong of the Strickland test, we will focus our analysis, as did the hearing justice, on the prejudice prong. Gomes argues that "[t]here is no question that if [his attorney] had investigated and confirmed that * * * Gomes had a valid defense to the breaking and entering charge, [he] would not have ever been faced with that many years to serve."

In his Rule 12A statement, Gomes cites to State v. Pires, 525 A.2d 1313, 1314 (R.I. 1987), for the proposition that "[w]hile judges at violation hearings are 'guided principally by the first offense,' this Court has 'never held that the trial justice must completely ignore the nature of the second offense when imposing a sentence' for a violation." Although defendant has accurately quoted Pires, it should be noted that this Court in Pires vacated the sentence and held that the trial justice had overlooked this Court's holding in State v. Fortes, 114 R.I. 161, 174, 330 A.2d 404, 411-12 (1975), in which we said:

> "[the violation] hearing was not held for the purpose of punishing [the] defendant for the new offense. Although the latter is the precipitating cause for the revocation hearing, it should play no part in determining the extent of the penalty to be imposed on the charge on which sentence had formerly been deferred. Punishment for the new offense must await the disposition of the case in which the new offense is charged."

Based on that reasoning, we concluded in Pires that the trial justice erred when he imposed the maximum sentence on the original charge specifically because the second offense was so serious. Pires, 525 A.2d at 1314. But here, the violation hearing justice did not impose a harsher sentence on the original charge because the new charge of breaking and entering was so serious;

- 11 -

rather, the nature of the original conviction itself was very serious in that it involved a violent act while applicant was armed with a firearm.

Furthermore, the standard at a probation violation hearing "is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. Beaudoin, 137 A.3d 726, 731 (R.I. 2016) (quoting State v. Prout, 116 A.3d 196, 202 (R.I. 2015)). Consequently, "the state must only show that 'reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation.'" Gilbert, 983 A.2d at 29 (quoting State v. Tetreault, 973 A.2d 489, 491-92 (R.I. 2009)).[12] "[T]he reasonably satisfied standard should not be applied to the narrow question of [the] defendant's guilt with regard to the new charges but rather, the standard should be applied to whether [the] defendant maintained the conditions of his probation." State v. Vashey, 823 A.2d 1151, 1156 (R.I. 2003) (quoting State v. Waite, 813 A.2d 982, 985 (R.I. 2003)).

The postconviction-relief hearing justice appropriately determined that any failure by Gomes's attorney to further investigate the merits of the breaking and entering charge had no bearing on the outcome of the violation case because there was ample evidence in the record for the hearing justice to satisfy the low burden of proof at a violation hearing and find Gomes to be in violation of the terms and conditions of his probation. Gomes's ex-girlfriend and her neighbor were present at the violation hearing and prepared to testify. Moreover, Gomes did not deny that he broke down the door to his ex-girlfriend's residence. Gomes also admitted to taking her cell phone during one of their arguments. Because of this evidence, the postconviction-relief hearing justice determined that Gomes was unable to prove by a preponderance of the evidence that a

---

[12] The state's burden articulated in Rule 32(f) of the Superior Court Rules of Criminal Procedure was amended to a fair preponderance of the evidence on June 21, 2016. However, applying the new standard would not change our holding in this case.

competent attorney would have been successful at the violation hearing and that, had Gomes been competently represented, the violation hearing justice would not have found him to be a violator. We agree with her determination.

Significantly, the postconviction-relief hearing justice determined that it was of no assistance to Gomes that his attorney may have failed to communicate the offer of nine years to him because he ultimately agreed to and received that shorter sentence. He was, after all, in jeopardy of having the entire eighteen years of his original sentence imposed. We have previously held that "when counsel has secured a shorter sentence than what the defendant could have received had he gone to trial, the defendant has an almost insurmountable burden to establish prejudice." Neufville v. State, 13 A.3d 607, 614 (R.I. 2011) (citing Rodrigues v. State, 985 A.2d 311, 317 (R.I. 2009)). Because he has failed to meet that burden, it is our opinion that Gomes has not shown that there is a reasonable probability that, but for any deficient performance on the part of his attorney, the result of the violation hearing would have been different. Therefore, any alleged deficient performance by Gomes's attorney was not so prejudicial as to amount to a deprivation of Gomes's right to a fair trial.

**Knowing and Voluntary Nature of Admission**

"Although a defendant in the probation violation context is not entitled to the full panoply of due process rights afforded to [the] defendants in criminal proceedings, he or she is nonetheless entitled to 'minimum due process protections[,]' [one of which is] 'the opportunity to be heard * * *.'" State v. Brown, 140 A.3d 768, 783 (R.I. 2016) (quoting State v. Bernard, 925 A.2d 936, 938 (R.I. 2007)). Nevertheless, a defendant may waive his right to a probation violation hearing. See 2 Neil P. Cohen, The Law of Probation and Parole § 25.11 at 25-13 (West Group 2nd ed. 1999). "Because of the significance of this waiver, the hearing [justice] should

ensure that it is made knowingly and intelligently, without coercion." Id. "[A] waiver will be deemed knowing, intelligent, and voluntary when the record demonstrates that the parolee's rights concerning the hearing and the effect of his waiver were explained to him." 2 Neil P. Cohen, § 25.11 at 125-26 (Supp. 2016); see also United States v. Correa-Torres, 326 F.3d 18, 23 (1st Cir. 2003) ("[N]otwithstanding the requirement that waivers of procedural rights with respect to revocation hearings must be knowing and voluntary, such waivers need not be accompanied either by any magic words or by a formal colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11[.]").

Our review of the record before us reveals that the postconviction-relief hearing justice found that, at the violation hearing, the Superior Court engaged in an appropriate colloquy with Gomes before the violation hearing justice determined that he had violated his probation. After allowing Gomes and his attorney to discuss the plea, the violation hearing justice asked Gomes to approach the bench so that he could observe him and he asked him several questions, the answers to which were direct and clear. Only after Gomes responded affirmatively to all the hearing justice's questions, including whether he was admitting to violation "freely and voluntarily," was the violation hearing justice satisfied that Gomes was waiving his right to a hearing voluntarily, knowingly, and intelligently. The postconviction-relief hearing justice appropriately concluded that "[t]he colloquy between the two g[ave] no indication that Mr. Gomes, despite a previous display of emotion, did not understand what he was doing or did not mean what he said when he responded to the Magistrate's questions." Although it is clear that Gomes was distraught at the beginning of the violation hearing, we agree with the postconviction-relief hearing justice that there is no evidence, other than Gomes's own assertions, that he was emotional to an extent that rendered his understanding of an admission a

nullity.  Indeed, the record clearly demonstrates that Gomes's rights concerning the hearing and the effect of his waiver were adequately explained to him and his admission was made knowingly, intelligently, and voluntarily.

**IV**

**Conclusion**

For the foregoing reasons, we affirm the judgment of the Superior Court.  The record shall be remanded to that court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| Title of Case | Darren Gomes v. State of Rhode Island. |
|---|---|
| Case Number | No. 2015-306-Appeal.<br>(PM 13-4203) |
| Date Opinion Filed | June 8, 2017 |
| Justices | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| Written By | Associate Justice Francis X. Flaherty |
| Source of Appeal | Providence County Superior Court |
| Judicial Officer From Lower Court | Associate Justice Patricia A. Hurst |
| Attorney(s) on Appeal | For Applicant:<br><br>Megan F. Jackson<br>Office of the Public Defender<br><br>For State:<br><br>Aaron L. Weisman<br>Department of Attorney General |