December 11, 2018

**Supreme Court**

No. 2016-323-M.P.
(PM 16-386)

| | |
|---|---|
| Mariano Jimenez | : |
| v. | : |
| State of Rhode Island. | : |

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mariano Jimenez          :

v.                       :

State of Rhode Island.   :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  On November 15, 2016, Mariano Jimenez petitioned this Court for the issuance of a writ of certiorari to review a September 19, 2016 judgment denying his application for postconviction relief in Providence County Superior Court.  On December 1, 2017, this Court granted his petition for a writ of certiorari.  He contends that he was denied effective assistance of counsel in his 2000 criminal trial and in his 2003 direct appeal to this Court.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this case should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this case may be decided at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

On September 11, 2000, applicant was charged by criminal indictment with: murder in the first degree (Count One); felony assault with a dangerous weapon (Count Two); carrying a pistol without a license (Count Three); and possession of a firearm by a fugitive (Count Four). Those charges stemmed from an incident that occurred on April 9, 2000, during which applicant fatally shot Manuel Clemente "in the back of the neck as Clemente was leaving an apartment building on Dartmouth Avenue in Providence" after a confrontation between the two at a party. *State v. Jimenez*, 882 A.2d 549, 550 (R.I. 2005). On December 1, 2000, a jury found applicant guilty of Counts One, Two, and Three.[1] The trial justice denied applicant's motion for a new trial on December 8, 2000. He was thereafter sentenced to life imprisonment on the first-degree murder count, as well as concurrent ten-year terms of imprisonment on Counts Two and Three, suspended, with probation, to be served consecutively to the life sentence.

Mr. Jimenez appealed that judgment to this Court in 2003, "contending that the trial justice committed reversible error (1) in permitting him to be questioned concerning his previous experience with the pistol that fired the fatal shot and (2) in failing to instruct the jury on the

---

[1] In addressing the direct appeal, this Court noted as follows:

> "Before trial, [Mr. Jimenez] had entered a plea of guilty to a charge of possession of a firearm by a fugitive from justice (count 4). Upon [Mr. Jimenez's] conviction of the other charges, the trial justice sentenced him to serve a term of life imprisonment on count 1 with a concurrent ten-year term of imprisonment on count 4. In addition, and consecutive to the time to be served on counts 1 and 4, the trial justice sentenced [Mr. Jimenez] to serve concurrent ten-year suspended terms of imprisonment, with probation, on the two remaining counts." *State v. Jimenez*, 882 A.2d 549, 550 n.1 (R.I. 2005).

lesser-included offense of manslaughter because of his alleged diminished capacity." *Jimenez*, 882 A.2d at 550. This Court rejected these contentions and affirmed the conviction in *Jimenez*, which sets forth a comprehensive recitation of the facts. *Id.* at 557.

In 2016, Mr. Jimenez filed the instant application for postconviction relief, alleging that he was denied effective assistance of counsel by his trial attorney in 2000 and by his appellate counsel in his direct appeal in 2003. In due course, an evidentiary hearing was held on his postconviction relief application on July 7, 2016.[2] We summarize below the salient aspects of what transpired at that hearing.

**A**

**The Testimony at the Postconviction Relief Hearing**

**1. The Testimony of Applicant**

Mr. Jimenez testified at the evidentiary hearing that his trial counsel never offered to give him a copy of the indictment against him, police reports, or other documents about the case, saying that he "never got any paper of anything." In addition, applicant responded in the negative when his postconviction relief attorney asked him if his trial counsel had prepared him to testify on his own behalf.[3] Mr. Jimenez also testified under redirect examination that he did not know before the trial that he would be called upon to testify on his own behalf. The applicant additionally testified that he told his appellate counsel that his trial counsel had acted ineffectively, but that appellate counsel declined to comply when he asked her to "deliver" "a letter to the prosecutor" about his trial counsel's allegedly ineffective representation.

---

[2] We note that the same justice of the Superior Court presided over both the criminal trial and the hearing on the application for postconviction relief.

[3] The applicant's postconviction relief attorney asked: "Before you testified at the trial, did he review your testimony with you?" The applicant responded: "Before going – no."

## 2. The Testimony of Applicant's Trial Counsel

The applicant's trial counsel also testified at the postconviction relief hearing. When asked whether he "provided Mr. Jimenez with the package that was put together by the police" in the course of their investigation of the murder of Manuel Clemente, trial counsel responded: "I don't remember whether or not I did give it to him. I know it was my practice to make copies and especially if my people are out in the prison, I would bring them a copy * * *." Trial counsel added that he had no independent recollection of going to the prison and giving applicant physical copies of the documents. Trial counsel further testified as follows:

> "I recall speaking to [Mr. Jimenez] about his testimony and what he had to say. I don't recall if we sat down and did a question-by-question preparation, but I remember telling him what he had to say. How he had to say it. How he had to maintain himself in front of the jury. How to behave with the prosecution."

## B

## The Hearing Justice's Decision

On September 19, 2016, the hearing justice denied Mr. Jimenez's application for postconviction relief, holding that, taking into account the criteria set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),[4] he had not met his burden of proving that either his trial counsel or his appellate attorney had failed to provide effective assistance of counsel. In a thirteen-page written decision, the hearing justice specifically determined as follows:

> "In all, Jimenez has completely failed to present any evidence which overcomes his prodigious burden of demonstrating that even if his attorney's efforts were somehow substandard (and this Court expressly finds that they were not), the result would have been

---

[4] It was in *Barboza v. State*, 484 A.2d 881 (R.I. 1984), that this Court first alluded to the then-recent decision of the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984); and the analytical approach set forth in *Strickland* has been utilized by this Court and the Superior Court in cases alleging ineffective assistance of counsel since that time. *Barboza*, 484 A.2d at 883.

different. * * * The conviction in this case was not a result of petitioner's attorney but, rather, the weight of the credible evidence against [him]." (Internal quotation marks omitted.)

On December 1, 2017, Mr. Jimenez filed a petition for the issuance of a writ of certiorari for review of the judgment denying his application for postconviction relief, which petition this Court subsequently granted.

## C

### Issues on Appeal

Mr. Jimenez has sought review of the decision denying his application for postconviction relief, arguing that the hearing justice erred and that his decision warrants reversal due to: (1) ineffective assistance by his trial counsel in that said attorney "never provided him with any documents" and did not prepare him to testify in his own defense; and (2) ineffective assistance of his appellate counsel for failure to argue ineffective assistance of trial counsel as part of his direct appeal.[5]

## II

### Standard of Review

When reviewing the denial of an application for postconviction relief, "this Court accords great deference to the hearing justice's findings of fact." *Lynch v. State*, 13 A.3d 603, 605 (R.I. 2011). As such, "[t]his Court will uphold the decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence." *Id.* (internal quotation marks omitted). However, this Court will "review *de novo* any post-conviction relief decision

---

[5] The applicant's memorandum filed pursuant to Article I, Rule 12A of the Supreme Court's Rules of Appellate Procedure alleges ineffective assistance only with respect to his trial counsel. However, in a memorandum filed subsequent to the prebriefing conference concerning this case, Mr. Jimenez "raises a claim that his appeals counsel * * * refused to obey the petitioner's request that she present a claim of ineffective assistance of counsel," which he argues amounts to ineffective assistance by appellate counsel in the direct appeal.

involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I. 2005) (internal quotation marks omitted). Nevertheless, even when the *de novo* standard is applied with respect to constitutional issues, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." *Gomes v. State*, 161 A.3d 511, 518 (R.I. 2017) (internal quotation marks omitted). An applicant for postconviction relief "bears the burden of proving, by a preponderance of the evidence, that such relief is warranted * * *." *Rice v. State*, 38 A.3d 9, 16 (R.I. 2012) (internal quotation marks omitted).

### III

### Analysis

As we have often noted, it "is well settled that [we] will pattern [our] evaluations of the ineffective assistance of counsel claims under the requirements of *Strickland v. Washington*, 466 U.S. 668 * * * (1984)." *Barros v. State*, 180 A.3d 823, 828 (R.I. 2018) (internal quotation marks omitted). In applying that standard, "the benchmark issue is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 829 (internal quotation marks omitted).

We have further observed that "[t]he *Strickland* standard consists of two prongs" and that an applicant must satisfy both of those prongs. *Id.* Accordingly, an applicant's "failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong," due to the fact that "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* (internal quotation marks omitted).

Under the *Strickland* mode of analysis, it is first required that an applicant "demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Page v. State*, 995 A.2d 934, 942 (R.I. 2010) (internal quotation marks omitted). In addressing a case with respect to this first prong, there is a "strong (albeit rebuttable) presumption * * * that counsel's performance was competent." *Id.* at 943 (internal quotation marks omitted). To satisfy the second prong of *Strickland*, an applicant must "demonstrate that the deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial." *Id.* (internal quotation marks omitted). To do so, an applicant must "show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (emphasis in original) (internal quotation marks omitted).

## A

### The Allegation Concerning "Copies of Documents"

Firstly, Mr. Jimenez argues that the hearing justice erred in denying his application for postconviction relief because his 2000 trial counsel allegedly failed to provide him with documents relative to his case. It is his contention that "the fact that his counsel failed to give him any copies of documents standing alone would show counsel did not function at the level guaranteed by the Sixth Amendment."

The only document that Mr. Jimenez alluded to in his postconviction relief application was "applicant's hand written and executed April 9th, 2000 confession which applicant wrote at

the Providence Police station * * *."[6]  At the hearing, Mr. Jimenez testified that his trial counsel did not provide him with that purported handwritten statement.  The relevant portion of the hearing transcript reads as follows:

> "[APPLICANT'S COUNSEL:] What did [trial counsel] say about the handwritten statement?
>
> "[APPLICANT:] Oh, he asked me where is the – I think he asked me where was the statement, and I told him, I mean, the police – the police has [*sic*] the statement.  That's what I told him.
>
> "[APPLICANT'S COUNSEL:] And what did he say?
>
> "[APPLICANT:] He said he was going to try to find it.
>
> "[APPLICANT'S COUNSEL:] Did he ever provide it or produce it for you?
>
> "[APPLICANT:] No.  Because I remember at the trial I asked him for my statement, and I don't know who said it, but somebody said that there was no statement.  And I told him, Why not?  I mean, I just – I wrote the statement, and I signed it.  So it's supposed to be somewhere."

In his decision following this hearing, the hearing justice found as follows:

> "At trial and at the [postconviction relief] hearing, Jimenez said that he had also provided the police with a handwritten statement, which he faults his trial attorney for not retrieving.  He testified at trial and at the [postconviction relief] hearing that he had never read the typed statement.  In denying Jimenez'[s] new trial motion, this Court rejected any notion that Jimenez was ignorant of the contents of that statement * * *.  The Court also accepts the state's assertion that there never was any handwritten statement * * *."

---

[6]     While no such handwritten statement was introduced at trial, a typed statement signed by Mr. Jimenez that was generated by the police after interviewing him was introduced.  (Mr. Jimenez testified at that hearing that he never read that typed statement before signing it and that the typed statement did not accurately reflect his written statement or what he told the police.  As to the typed document, he testified: "this doesn't even start the way I tell them.")

The existence *vel non* of the just-referenced "handwritten statement" was a question of fact that the hearing justice ruled upon after hearing testimony from both Mr. Jimenez and his trial counsel. The hearing justice determined that that statement did not exist, and this Court perceives no clear error in his determination. *See Fontaine v. State*, 602 A.2d 521, 525-26 (R.I. 1992) ("Because the trial justice was presented with conflicting testimony and evidence, he was able to make sound credibility findings by assessing the facts and the totality of the circumstances before him."); *see also State v. Feng*, 421 A.2d 1258, 1273 (R.I. 1980). Affording the requisite deference to the hearing justice's findings, we perceive no basis for concluding that trial counsel's representation of applicant was constitutionally deficient in this regard.

To the extent that applicant contends that his trial counsel was ineffective because he failed to provide applicant with other documents related to the case, we similarly defer to the hearing justice's determinations and conclude that there was no clear error on this ground. It is fundamental that "[t]his Court will not disturb credibility determinations by a postconviction-relief hearing justice unless the [applicant] demonstrates by a preponderance of the evidence that the hearing justice was clearly wrong." *Rice v. State*, 38 A.3d 9, 17 n.11 (R.I. 2012) (internal quotation marks omitted).

When applicant's postconviction relief counsel asked if his trial counsel "gave [him] a copy of the indictment against [him]," Mr. Jimenez replied: "No. I never got any paper of anything." The applicant also testified that he never received any copies of the police reports in his case. At the postconviction relief hearing, applicant's trial counsel testified in pertinent part as follows with respect to this issue:

> "[COUNSEL FOR THE STATE:] Do you recall whether or not
> you provided Mr. Jimenez with the package that was put together
> by the police in this case?

"[TRIAL COUNSEL:] I don't remember whether or not I did give it to him. I know it was my practice to make copies and especially if my people are out in the prison, I would bring them a copy * * *. But I don't have an independent recollection that, you know, I actually went there and gave it to him.

"[COUNSEL FOR THE STATE:] And is that because it was so long ago?

"[TRIAL COUNSEL:] Yes, that's why."

We see no basis for concluding that the hearing justice erred when he determined that applicant had not met his "heavy burden" under *Strickland* with respect to this allegation of error. The applicant has failed to satisfy both prongs of the *Strickland* analysis concerning ineffective assistance of trial counsel. Mr. Jimenez's assertion before this Court that he "has proof of the prejudice that resulted from the counsel's error" in not providing him with documents is not even remotely sufficient to meet his burden under *Strickland*. Mr. Jimenez's burden was to show by a preponderance of the evidence that the hearing justice's determination was clearly wrong and that by allegedly failing to provide him with documents relating to the case, his trial counsel was so ineffective that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Rice*, 38 A.3d at 17 n.11. He has not met this burden by simply stating that his trial counsel allegedly committed this error. Therefore, this Court affirms the ruling of the hearing justice on this ground.

**B**

**The Allegation Concerning Trial Counsel's Failure to Prepare Applicant to Testify**

Mr. Jimenez also contends that the hearing justice erred in denying the application for postconviction relief because his trial counsel allegedly failed to prepare applicant to testify in his own defense and that "[h]e was prejudiced by his counsel not preparing him to testify." At

the postconviction relief hearing, Mr. Jimenez testified repeatedly that his trial counsel did not prepare him to testify and that he had not known before trial that he would be expected to testify on his own behalf:

> "[APPLICANT'S COUNSEL:] Did he prepare you to testify on your own behalf?
>
> "[APPLICANT:] No."

Shortly thereafter, Mr. Jimenez further testified:

> "[APPLICANT'S COUNSEL:] Before you testified at the trial, did he review your testimony with you?
>
> "[APPLICANT:] Before going – no.
>
> "[APPLICANT'S COUNSEL:] When did you first learn that you were going to testify on your own behalf?
>
> "[APPLICANT:] At the hearing.
>
> "[APPLICANT'S COUNSEL:] At which hearing?
>
> "[APPLICANT:] In the courtroom. He told me that I was going to take the stand.
>
> "[APPLICANT'S COUNSEL:] At the trial?
>
> "[APPLICANT:] Yes."

Trial counsel testified at the hearing as follows (in pertinent part) regarding applicant's trial testimony and the pre-trial preparation for same:

> "[COUNSEL FOR THE STATE:] Prior to the trial beginning, did you have a conversation with [Mr. Jimenez] about whether or not he might have to testify? Do you recall that at all?
>
> "[TRIAL COUNSEL:] Yes. As a matter of fact, I remember telling him that although he had a confession and they may introduce the confession into evidence, that with this type of case, because he would have to testify to say he was – he was scared for his life, he was terrified and that's why he acted the way he did.

> Because I basically said historically jurors like to hear a defendant say, I didn't do it or I did it for these following reasons."

Trial counsel's testimony in this regard continued on cross-examination as follows:

> "[APPLICANT'S COUNSEL:] And when you advised him as to the problems that he had with his self-defense, you told him that he was going to have to testify?
>
> "[TRIAL COUNSEL:] I told him a number of times he was probably going to have to testify. I would prefer that he not have to testify, but that deal with the self-defense issue, the assault issue, and the fact that the man was running away or running downstairs, it was an issue.
>
> "[APPLICANT'S COUNSEL:] When did you first tell him that he had to testify?
>
> "[TRIAL COUNSEL:] Oh, I don't remember.
>
> "[APPLICANT'S COUNSEL:] Could it have been during the trial or right at the day of the trial?
>
> "[TRIAL COUNSEL:] No, I would never have told him during trial that, Oh, hey, you're going to testify. It was well before the trial."

In his written decision, the hearing justice stated: "The Court fully credits [trial counsel's] testimony that long before the commencement of trial, and on more than one occasion, he discussed the merits of the case with Jimenez and that he had also advised him several times that he would probably have to testify * * *." This Court affords great deference to such a determination concerning credibility, and we conclude that there was no clear error on this ground. *See* III.A, *supra*. The hearing justice made an express credibility determination after Mr. Jimenez and trial counsel both testified on this question of fact, and we see absolutely no basis for reversal with respect to this issue. *See generally State v. DiCarlo*, 987 A.2d 867, 872 (R.I. 2010) ("This Court affords a great deal of respect to the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama

that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record.") (internal quotation marks omitted).

## C

### The Alleged Ineffective Assistance of Appellate Counsel

Mr. Jimenez argues that the hearing justice additionally erred when he found that counsel in Mr. Jimenez's direct appeal had not rendered ineffective assistance. Mr. Jimenez contends that "his appeals counsel * * * refused to obey the petitioner's request that she present a claim of ineffective assistance of [trial] counsel to the Rhode Island [S]upreme Court * * *."

When addressing the claim of ineffective assistance of appellate counsel, the hearing justice concluded as follows:

> "This imprecation is also meritless. It is firmly established that claims of ineffective assistance of counsel should be raised in applications for postconviction relief, not in direct appeals."

Whether Mr. Jimenez's appellate counsel could have raised a claim of ineffective assistance of trial counsel is a question of law which this Court reviews in a *de novo* manner. *See Gomes v. State*, 161 A.3d 511, 518 (R.I. 2017). We agree with the hearing justice's ruling to the effect that Mr. Jimenez's appellate counsel could not have properly raised ineffective assistance of his trial counsel on direct appeal to this Court. *See State v. Brouillard*, 745 A.2d 759, 768 (R.I. 2000) ("This Court repeatedly has held that it will not consider a claim of ineffectiveness of [trial] counsel that is raised for the first time on a direct appeal."). Accordingly, there was no ineffective assistance of either Mr. Jimenez's trial or appellate counsel, and we conclude that the hearing justice properly denied Mr. Jimenez's application for postconviction relief.

**IV**

**Conclusion**

Accordingly, we affirm the judgment of the Superior Court denying Mr. Jimenez's application for postconviction relief. We remand the record to that tribunal.

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mariano Jimenez v. State of Rhode Island. |
| **Case Number** | No. 2016-323-M.P.<br>(PM 16-386) |
| **Date Opinion Filed** | December 11, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Paul Dinsmore, Esq. |
| | For Defendant:<br><br>Aaron L. Weisman<br>Department of Attorney General |